Brown v. Peregrine Enterprises. And so, Mr. Kimmel, am I pronouncing that right? Yes, Your Honor. Mr. Kimmel, you have reserved two minutes for rebuttal. So, that gives you eight minutes out of the gates. The floor is yours. Good morning. Jeff Kimmel with the Ackerman Law Firm for defendant appellants in this matter. May it please the court. The FAA, the Federal Arbitration Act, was passed in 1925, in large part to counter judicial hostility to arbitration as a form for dispute resolution. Boy, times have changed. It seems like the courts now love arbitration. Your Honor, I would tend to disagree with that, based on my own experience. As reiterated by the Supreme Court just last year in Morgan v. Sundance, while arbitration agreements need not be treated more favorably than other types of contractual arrangements, they cannot be treated differently or less favorably. Look, I think we all get that. I don't think there's any dispute that it's a contract. It's entitled to be enforced. The FAA contemplates that the party's agreement with respect to how an arbitration is going to proceed is going to be followed and respected. So I think the issues here are sort of what do you do? There's a unique set of facts, but what do you do when, for a variety of reasons, the thing stalls? And so I guess that's really where we ought to start. So if I understand Your Honor correctly, you want to talk about the right to point or the potential to point a substitute arbitrator? Well, we can go wherever you want, but I don't think we need to hear the history of the FAA. Thank you. So just to address the judicial, in this case, what seemed to be judicial hostility to arbitration, as the Court is aware, in this case the defendant, the Pellants, my clients, sought to arbitrate, compelled arbitration in this case, and when it came time to arbitrate, advocated for adherence to the contract, which in this case provided that both sides were to split evenly. The parties agreed. I mean, so the case gets brought here, and then without a formal motion to compel arbitration, the parties agreed that, yeah, there is an agreement we've got to arbitrate, right? Well, there was a – Correct? Without a formal motion, there was a pre-motion conference.  Okay. So the parties agreed to arbitrate. The parties agreed. They go to arbitrate, and then there's this dispute over the fees and who's got to pony up the money to start. So I get all that, but I mean, one thing that you could have done that you don't seem to have done is you could have gone back to Judge Phelan and made a motion to compel, and sought an order directing the plaintiffs in this case to put up their share. But you didn't do that, right? Well, Your Honor, we might have done that, but in the interim, the plaintiff Pellies made a motion to lift the stay, and we argued in opposition to that. Well, but I mean, how much time are we talking about lapsing between when the arbitration – to arbitrate and the stay was imposed and the motion to lift the stay? A matter of – there was a matter of weeks between the time that the arbitration association closed the case and the plaintiff Pellies moved to lift the stay. Right, but the dispute over payments, that was going on for a while, right? That was going on for several weeks, Your Honor, in which, during that time, the defendant appellants repeatedly stated to both the American Arbitration Association and plaintiff Pellies that they're ready, willing, and able to move forward with the arbitration on the explicit terms of the agreement. Well, let me ask you this. Do you agree that the AAA arbitration rules provide for this disproportionate initial payment by your client? I do, Your Honor, but I also – You all chose this as the arbitral body, so why aren't you obliged to abide by its rules for initiating the arbitration? As you were told, as I understand it, once the arbitration was started, according to their payment rule, you could have argued that the contract obliged the other party to split the costs with you. You were told you could raise that. Well, Your Honor, we raised it at the time that the American Arbitration Association – Right, you agreed to arbitration before this body, which has certain rules. It would be like agreeing to jurisdiction in this court or agreeing to have a matter adjudicated by this court, but contracting that you wanted different rules. The court wouldn't agree to that. Well, Your Honor, the law of the state of New York is that where there's conflict between an agreement between the parties to arbitrate and the forum rules, the agreement to arbitrate, the contract, prevails. Why isn't that the kind of issue that you would raise before the arbitration? In other words, we're not talking about a gigantic sum here. You pay for the admission fees of yourself up to the – to cover the part that the agreement says should be paid by the adversary. Go to arbitration, and then issue number one before the arbitrator. We want our money. You want our money back. I understand, Your Honor, and the amount that was being – That's an agreement that is subject to arbitration. Yes, but if I might respond, the amount was $34,000 that the American Arbitration Association was asking because of the multiple arbitrations, but also the contract provides that where there's a dispute, where there's a conflict between the American Arbitration Association and the contract, the contract controls. That's explicitly in the agreement agreed to by both sides. That's not an agreement between the parties. How does that bind the American Arbitration Association? It doesn't bind the American Arbitration Association, Your Honor, but the plaintiff appellees were certainly able, as were defendant appellants, to pay the one half of the fees. To make it clear, perhaps, if it didn't bind the American Arbitration Association, why wasn't – why weren't they entitled to say, look, the rules are you have to pay if you want us to hear anything? And when you didn't, they terminated the procedure. Well, let me clarify. Ultimately, the American Arbitration Association should comply with the contract between the parties, but essentially the question here is when one party is advocating for arbitration as defendant appellants were here, the other party is seeking a claim of, you know, to show waiver and to lift a stay, why is it incumbent upon the party that's trying to adhere to the contract rules to pay the larger amount to start the case, which is in conflict with the contract agreed to by both defendant appellants and plaintiff appellees? The only explanation for that is treating a contract for arbitration differently than you would treat any other contract. You have to get in the door somehow. Get before the – get the arbitration going. Yes, Your Honor. And plaintiff – That's what you would do if you paid the full amount that they require. And then after that, there's still the agreement between you and your adversary, and you can – that can be litigated before the arbitrator. That's correct, Your Honor, but it was incumbent on the plaintiff appellees, not defendant appellants, to pay their share of the filing fees. There was nothing to prevent them from doing that. Just because the American Arbitration Association says that we want the employer to pay an increased portion of fees, there's nothing to prevent the plaintiff appellees from doing what they were obligated to do under the contract. At any time, and as we inform both sides on multiple occasions, plaintiff appellees can pay their half. We'll pay our half. We'll go forward. We'll let the judge, let the arbitrator decide ultimately if the fee-sharing provision is enforceable, and if so, to allocate fees accordingly. Is that an issue for the arbitrator or for the district court? Is what an issue? The issue of paying the difference. That is – Making it even. That's an issue for the arbitrator. But you don't get to the arbitrator until you pay the arbitration. Until both sides complied with their contractual obligations, that should not be any different in light of an arbitration agreement or any other contract, we could not get in front of the arbitrator. I'm not saying they're not in breach. I'm not saying they're not in breach of their agreement with you. I'm just saying who gets to decide it. And if the arbitrator, as you just said, it's for the arbitrator to decide. Somebody's got to get in the door. And the only way to get in the door is by their rules. Or by the contract. And as you said, Your Honor, maybe they're in breach, except in this case the court held that my clients were in breach of the agreement, not only in breach, a material breach of the agreement, by doing nothing other than saying repeatedly, we're ready, willing, and able to move forward on the terms of the agreement. That shows hostility to arbitration agreements. But, Mr. Kimmel, I mean, so you would agree with me, though, that Section 3 of the FAA would permit you to go back to Judge Fala and say they're not arbitrating. We would like an order compelling them to pony up their half of the fee consistent with the agreement because we can't get to first base unless that happens. And we shouldn't have to do it ourselves in breach of the agreement just to get into the arbitration. You could have done that, right? I suppose we could have done that, Your Honor. Instead, we argued on the motion to lift the stay that the stay should not be lifted. I mean, I guess the worry is that there's going to be incentives to game the system. And I'll ask your adversary about that. But it does seem like the party that starts the case in federal court and wants to be in federal court and reluctantly gets dragged to arbitration, if by not complying with the terms of the contract they managed to get arbitration thwarted, they've been rewarded for that. And that seems perverse to me. But it does seem that there's other remedies here that could kick in before things get to the point that they're at now. Right? I mean, like, if you had come in and made a motion to compel before the AAAs had slammed the door, then you might have gotten the relief you wanted and been arbitrated. Do you agree? I believe that's a possibility, Your Honor. Ultimately, as you said, the perverse result is that the party not complying with the contract terms has been able to avoid arbitration in this case, which is different from any other case decided in this circuit concerning appointing a substitute arbitrator, which is why we would argue that in this case, where the loss of the forum was as a result of the party seeking to avoid arbitration from complying with the contract to pay what they're obligated to pay, that a perverse result would be that there's no option for arbitration after that. And as such, a substitute arbitration form should be appointed, as is done in many other circuits around the country. The case law doesn't seem great for you in our circuit on that. I mean, it seems the courts have been very reluctant to appoint a substitute arbitrator where the arbitration agreement is explicit. There's only one arbitrator in town. It doesn't contemplate a swap, right? So, Your Honor, this circuit has, in the Solomon shareholder case, ruled that they could not appoint a substitute arbitrator. But again, that's very different from the scenario in this case where the party seeking to avoid arbitration was the one not complying with the agreement, which caused the forum to shut the door, as you put it. Well, I suppose section 4 also has a provision about where a party fails to avail itself of the arbitration. And I guess you could argue that that's what the plaintiffs did here. That would be a different avenue, which is not based on the substitution portion of section 4 of Title IX. Well, anyway, I see that we're way over for you, but you've reserved two minutes for rebuttal. Let's hear from Mr. Sani. Am I pronouncing that right? Yes, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Neil Sani for the plaintiff's appellees. I want to just start. I think, Judge Raji, you precisely stated the kind of core of this case. The defendants here drafted the arbitration provision. They specifically designated the AAA as the arbitral forum, and they specifically chose for the AAA's procedural rules to apply. Right, but the contract explicitly says that there's a conflict between the contract and the AAA's rules. The contract applies. I mean, it seems to me really disingenuous for you guys to get up here and say you're not going to abide by the terms that require you to pay your share, and then, lo and behold, well, great, that just ends up thwarting the entire arbitration that we didn't really want to be in to begin with, and then we get rewarded by coming back to federal court. It seems like games. If you'd come to me, I'd have probably sanctioned you. So what am I missing? Your Honor, so I think the question here is, as Judge Walker said, it's not about the contractual argument or the merits. It's who decides that question. And so the U.S. Supreme Court has repeatedly held that arbitrators decide the question about procedural. But wait a minute. So if they had come in and said to Judge Fela under Section 3 of Article 9, please compel them to pay their half of the arbitral fees because without that we can't get started, you're saying that would have been beyond the jurisdiction of the court to grant that motion to compel? No, Your Honor. I think, as you said, that would have been one of the opportunities that the defendants could have taken advantage of, and they had two months in which to do so. So in your colloquy with my colleague here, you asked how much time they had. I'm confused about that. Yes, Your Honor. You've entered into an agreement that provides for arbitration, and this is the contract says you're going to split the cost. The construction of the contract is for the arbitrator, right? Yes, Your Honor. Okay. The whole problem here is that the arbitrator can't start until a filing fee has been paid. And so I'm not sure how you're saying that it's for the arbitrator to interpret the contract, but how you're thwarting it is by breaching the contract in advance of the arbitration. So I think there are different ways that this could have proceeded. So one is that the defendants could have paid the fees under the arbitral rules and then brought that contractual argument before the arbitrator who could provide reimbursement, who could put damages against the plaintiffs, et cetera. Second, the defendants could have gone to the district court and argued that the plaintiffs were acting in bad faith, which I want to note is not the case here. The plaintiffs stipulated arbitration and paid the fees that AAA asked them to pay. But not the fees that you agreed to pay. I understand, Your Honor. So what's the reasoning for that? I'm trying to understand. So why is it that you were willing to pay the AAA fees but not the fees that you contractually agreed to? Your Honor, so I'm not sure. That's not in the record. I think it's an expensive fee. But you think that's an acceptable choice, that somebody who's got a contract in which they've said we'll pay half and then they've got a AAA requirement that they pay a fraction of that gets to choose. We'll do less. No, Your Honor. I believe that the AAA has those rules because under state law and federal law issues of unconscionability on consumer and employment arbitrations, they've adopted this fee schedule. And I think you can ask my colleague on the other side, but I think that's why they did not go to the district court because the district court would likely have found under the precedent that an equal filing fee rule may be unconscionable. But I'm not sure. And so that issue has not been presented. And they could have raised that question by going to the district court. So I just think that these are really good questions if the facts were different. But the facts here are that for two months, the defendants were on notice from multiple letters from the AAA who they chose to be the exclusive arbitral forum that they could raise this dispute with the arbitrator. Or, as you've said, Judge Sullivan, they could have gone to the district court. But they just chose to sit on their hands. And every case, you know, we've cited – But weren't you guys sitting on your hands too? Your Honor, we paid the fees and we're ready to go forward in arbitration. If they had paid the fees, we would have – So you were hot to arbitrate. You really wanted to arbitrate. But just now it's just sort of fortuitous that you no longer have to. You're in the court that you chose to be in, and you get to now proceed in federal court. I can't say we were hot to arbitrate, but I do think that this is not a case about judicial hostility to arbitration. Well, they seem like they still want to arbitrate. You don't, right? Well, Your Honor, now we're in district court, and I think that they've defaulted on the right to arbitrate. But I think that leads us to the second question, which, if you don't agree with us on the default or waiver question, is enough to affirm the district court's decision. That's the substitution issue. And so the fact is, in the real world, that the AAA has now refused to arbitrate any disputes with the defendants because the defendants did not follow their rules. So the AAA is no longer in available form. But wait a minute. So you're saying even if we disagree with you and we find that the district court wrongly lifted the stay, we should affirm the district court on the substitution issue and then remand for what? Perpetual limbo? No, Your Honor. So it's not disagree with us on the lifting the stay. It's there's two different bases for lifting the stay. Right. One is? One is default or waiver. Which clearly it wasn't. And the other is waiver. And I guess the question is, well, who waived? Them or you? No, Your Honor. I actually think waiver and default arbitration has been had is, in my view, a first bucket of reasons. And the second bucket of reasons is the substitution issue. So that's a different reason for lifting the stay. Because even if, I think as happened in Moss, in Moss, no party waived their right to arbitrate or had the arbitration been had. But the forum was simply unavailable. And I think Moss is a very powerful precedent. Because in Moss, the arbitral forum was not available by no fault of the parties. In Moss, the arbitral forum was unavailable because there was a preexisting consent decree preventing the arbitration forum from hearing the case. This is a very different case, right? Because of the facts of the case, whoever you want to kind of say the blame resides with, the arbitral forum exercises discretion to not take the case, exactly what happened in Salomon. And so under this court's precedent, all that the court has to decide is whether the contract, not for what reason, but whether the contract specifies or designates an exclusive arbitral forum. And the indicia of exclusivity in this contract is exactly the same as in Moss. So the contract, the arbitration provision in three pages, from A51 to A53 of the appendix, refers to the AAA in multiple aspects. So it says that the arbitrator must be, quote, appointed by the Arbitration Association. It, on multiple occasions, says that, quote, the rules of the arbitration, American Arbitration Association will apply. And it even says that any appeal must be taken to an office of the AAA in New York. And so those indicia of exclusivity are precisely the same as in Moss, and there is no provision or even any indication of a mechanism that would take place if the arbitral forum was not available. But why not under Section 5, I think I may have said 4 before, but why under Section 5 wouldn't it be appropriate for the district court to say that there was a method provided, there's a party here who failed to avail itself of that method, and that's really you guys, it seems to me, since you wouldn't pay your share of the filing fee. And that, then, is an independent basis on which the court can appoint an arbitrator. So, again, Your Honor, I think that's just foreclosed by Salomon and Moss. No, Moss is not about failure to avail. It's about lapse, right? Well, Your Honor, in Salomon, this court said courts may not, quote, use Section 5 to circumvent the party's designation of an exclusive arbitral forum. And I think that's exactly what we have here. The contract doesn't. So I want to just say, so the Second Circuit has said that Section 5 of Article 9 is not to be enforced? It is not to be used. So here's the language. Yeah. If a method be provided and any party thereto shall fail to avail himself of such method, then, upon application of either party, the court shall designate or appoint an arbitrator or umpire as the case may require. Yes, Your Honor. I don't think it interpreted that particular language. So if somebody fails to avail themselves, the court is powerless to appoint, in your view? No, Your Honor. I think that it's not that we, there was no failure to avail here. So I think, you know, that language hasn't been discussed in the briefing, but I think So your client availed themselves of arbitration? Yes, Your Honor. We stipulated to it. We paid the fees that the AAA required. But you didn't pay the fees that you're required to pay. Yes, Your Honor. I think, you know, of course, there's a dispute on what we're required to pay under the AAA's rules versus the contract. But that's different from And the contract says that any dispute, the contract prevails, right? Yes, Your Honor. Right. So But I don't think that means we failed to avail. So I think a hypothetical here is useful. So you've complied with the contract. In your view, you've complied with the contract. No, Your Honor. We complied with the AAA's rules. Okay. So you've not complied with the contract. This is, I mean, the method that is referred to in Section 5 is about a contractually prescribed method, right? Arbitration is a matter of contract. But it is also a dispute resolution system. And Section 5 is about the court's power to order someone into this dispute resolution system. And again, the U.S. Supreme Court has made clear in Howsam and multiple cases that questions about the procedures of arbitration, including fees, are for the arbitrator to decide. So I think this discussion about the contractual dispute is a little bit orthogonal to the issue in this case, whether or not the defendants are right about that. Could you clarify something? Yes, Your Honor. So we don't have an arbitration now, right? Yes, Your Honor. My question is, is there any possibility or any authority on the part of this court or any court to compel arbitration at this stage and to fashion an appropriate remedy here? Not that I'm aware of, Your Honor. And I think Moss and Salomon, at least in this court. One of the problems, of course, is the AAA and its rules. Its rules play a role in this case, but the AAA is not a party. And in fact, you'd be compelling the AAA to do something as a third party, right? Yes, Your Honor. So I don't think you could compel the AAA to do something. And so that's why I think the defendants are asking to appoint a substitute arbitrator. That's the only way around the kind of reality on the ground. And I think that's foreclosed by Moss and Salmon. So I think that's why, if this court, the only forum left to hear the claims are federal courts. So I think that's why it's a different reason for lifting the stay that's separate and apart from the breach or waiver or default on the front end by the defendants. Well, I mean, I understand that you think your claims get heard by the district court. But what about a claim that you're in breach of the license agreement's arbitration clause? Yes, Your Honor. So I mean, I think that the defendants could still, if they want, in the district court, raise the question that we breached the equal fee sharing provision and seek reimbursement. Well, that isn't the only damage they've suffered. They've been denied a hearing in the forum that the parties agreed to. And so why isn't the remedy for that that there would be an alternative arbitration? I mean, if the court can't compel AAA to take it, either it could compel you to pay the money or to arbitrate separately, because there's no question that the parties intended to arbitrate. Your Honor, I think that was the case also in Moss and Salmon. There's no question that the parties intended to arbitrate, but the court held that that lack, because this goes to the district court's power under the FAA. So if the party's intent is to arbitrate before a particular arbitral forum, and that forum is no longer available, the district court, under this court's precedent, lacks the power to force them to do the arbitration. Well, it seems to me that what you're looking for is to litigate your claim in federal court when the parties agreed that it would be arbitrated. And the reason it's not being arbitrated is because you breached a provision of the license agreement, the arbitration provision. So how does the district court deal with your conduct here? Your Honor, again, we do not- It sounds to me, from your brief, it's just as if it's ignored. And I'm not sure that we're comfortable with that. I understand, Your Honor. Again, our first argument is, of course, that we were not in breach because we followed the AAA's rules, just as the court- So the AAA's rules trump the- You're not in breach of AAA's rules. You're in breach of the license agreement. Yes, Your Honor. So I think it's similar as if a federal court has a fee for paying a complaint, right, for filing a complaint. And there may be a contract between parties saying that costs would be split in a different way. The argument in that case about fees would always come after the complaint was filed in compliance with this court's rules. And so I think the problem here is, again, that you have to start the process before you can remedy the breach. And so, just as in a federal court, if a plaintiff just said, we're not going to file a complaint because we disagree about the amount of fees we have to pay, that case would never be heard. And so the same problem is here, is that the defendants had not one, but at least two and maybe more options that would allow the dispute to be heard. But you see, you're urging a conclusion that a party is obliged to do what it's specifically contracted it would not have to do in order to be heard on your contract obligation. That seems perverse. Well, no, Your Honor, because I think, like Judge Sullivan said, they could have gone to the district court during the pendency of those two months when there was a dispute, which has happened in some of the cases we've cited in our brief, right? But they chose not to do that. So it's not that they had no option, and I do agree. This would be a very different case if the AAA terminated the arbitration in one day and the plaintiffs ran to court the next day. And, you know, you may argue that there was bad faith or there was no opportunity for the party who did not pay the fees to kind of remedy that situation. But the facts here are just very different. The AAA gave them two notices about what was going on and the fact that they could raise the fees issue again. And that was more than enough time for them to go to the judge and ask for an order. And I still don't understand why they didn't do that, and I think my colleague on this side hasn't explained kind of the reasoning. And is it too late for that now? Yes, Your Honor. I think it is too late. Because? Because the AAA has said that it's no longer going to administer any arbitration. Maybe the AAA will change its mind. Yes, if the plaintiff shows up with the or the defendant shows up with the money, half of which you provide. Yes, Your Honor. Again, I think that once a party has defaulted on its right to arbitrate, the defendants haven't cited one case in which the court has held that this kind of refusal to participate does not qualify default or waiver. And so at that point- But there's no case like this where the default is based on their insistence on having the contractual provision adhered to. Not exactly, Your Honor. The Spano case, which we cite in our papers, in that case the arbitrator was asking the party to pay $300 more than the fee it said. The Freeman v. SmartPay case, which is an 11th Circuit case, in that case the SmartPay interpreted the contract to require to pay a different payment than it did. Look, if you had just complied with the contract, this would have been an arbitration. So you're saying they defaulted by not fronting you the money. That's what you're saying, right? Your Honor, I mean, I would say they defaulted- Just yes or no. Is that what you're saying? Yes. Okay. But you didn't default by not adhering to your obligation to pay half the fee. We would have defaulted if we did not pay the fee the AAA required of us, I think. I'm sorry, was your last- I think that the parties, if the plaintiffs had not paid their fee that the AAA assessed against them, that would have been a default. A default of what? Default of their right to arbitrate under the arbitration provision. But you're saying it was $300 a person. Yes, Your Honor. Period. Under the rules that exist, you know, preexisting this dispute. But you're rewriting the contract, right? You're saying that where there's a dispute, where there's a conflict between the contract and the AAA rules, AAA rules apply. And you don't default unless you don't comply with the AAA rules. But the contract expressly says that where there's a conflict, the contract applies, and you clearly breached the contract, right? Yes, Your Honor. So, again, they could have gone into arbitration and got that money back, or they could have gone to the district court and argued that the plaintiffs were in default. Or you could have gone to the district court and said, Judge, you should compel them to front us the money because it's unconscionable that we should have to adhere to a contract that we negotiated. I don't think we could have done that affirmatively, Your Honor. Why not? Let me ask you this one important question. The AAA has its rules, and I think what was it, 74% or something like that? 86, I thought. Whatever. It was a disproportionate fee has to be paid by the employer. And so my question is, what would the AAA's position be if you said, well, we're splitting the fees here? Even though it's not in compliance with your rules, would they care? They say, well, we want the total fee, and you're giving us the total fee. Or would they say, no, it has to be in proportion according to our rules?  And I don't know the answer to that, so I'm not sure how the AAA would deal with that. They don't know how important this rule is to the AAA. Yeah. But you're saying that you think that if you had just written a check with your half of the money that the AAA would have declined? I just can't speak for the AAA there, Your Honor, because I don't know if the reason they have that rule is to comply with certain kind of legal parameters. It depends on whether their rule matters to them. And if they decline, they decline. Then you just don't have that forum. But nothing would have prevented you from just writing them a check for the difference, right? No, Your Honor, I guess that's true. That would have been in compliance with the agreement that your clients executed. Assuming that the AAA doesn't care. Yeah. Yes, Your Honor. All right. Well, we've gone way over with you, too, Mr. Sonny. Thank you. Some very quick points and finish up. As to unconscionability of the fee-sharing provision, the law is very clear in New York State, as again under the Brady v. Williams New York State Court of Appeals case, that such a provision is not per se unconscionable regarding the fee-sharing. That it's determined on a case-by-case basis. In any event, I would presume that's an argument that would have been made in opposing arbitration in the district court. It could have been made anyway, right? Well, ultimately it's an issue for the arbitrator. Well, unconscionability. I mean, if you had made a motion to compel arbitration and they had said to Judge Phaler, look, we can't arbitrate because this would basically break us by having to pay half the fees. Would that be something she could consider or not consider in deciding whether to compel arbitration? Well, in my opinion, it would be for the arbitrator. But it's possible, I've seen the courts deal with that issue as well, and then the plaintiff appellee would have to show that they could not afford, due to their financial circumstances, and have to provide specific evidence concerning their financial circumstances, that they could not adhere to that provision. In which case, the arbitration would go forward without that provision, as a result of the severability clause in the license agreement. Well, I'm not sure I understand that. Who would pay the fee to the AAA then? Ultimately, then, it would be the obligation of defendant appellants. Okay. If they would have gone to the court and said, we can't afford to comply with this fee-sharing provision, and the court ruled on it. And then you would have to pay. Yeah, we would have had to adhere to the employment rules of the AAA. See, that's why I'm having difficulty understanding why, even though you insist and have contract language to support the notion that it had to be split, you didn't just pay it and then have the arbitrator say, you know, you're obliged under this contract to pay half of it, reimburse half of it for him. Well, Your Honor. Why did you let it get to this point, rather than get the arbitration? I mean, you just told us a moment ago that Judge Fehler would not have been the proper court to decide whether or not it was unconscionable. That would have been for the arbitrator. Well, then so, too, the arbitrator would have decided whether they had to pay half. Right? Well, Your Honor, judges do entertain that type of motion and deal with that on a regular basis as well. But ultimately, the question is, why is it defendant appellant's obligation to pay that increased amount? I understand you have an argument that they breached the contract. The question just is, is that going to be decided by the arbitrator? And if so, why you didn't get the arbitration going? I mean, I understand you are of the view that you had no obligation to front them the money. But nevertheless, that's what would have taken to get the arbitration going, right? Or the other side paying their fair share. Somebody would have to pay the full amount of the filing fee. Let me ask you, now that you're in the district court, and I know the question is whether that's where you should be, but what claim or counterclaim do you have for the breach of this license agreement, the arbitration provisions of this license agreement? I mean, they're going to bring their—they want the district court to hear their payment obligation. But do you have a counterclaim for damages resulting from your loss of arbitration? It's possible, Your Honor. Well, I'm just asking, what are you going to do if you're left—if we leave you in the district court? We're going to be prejudiced by not being able to litigate in the forum that we contracted for. And how? How? So that I understand that. Well, there's different discovery rules. There's potential jury trial versus no jury trial. Because, again, the court here ruled that there was such a material breach of this agreement that none of our rights under that agreement exist as of today. So we would be in—there would be potential for class actions as opposed to the single arbitration that the agreement called for. So there's multiple negative repercussions on my client as a result of the contract that both sides agreed to not being enforced. What's your view on if you showed up with the money tomorrow, whether the AAA would consider hearing this arbitration? I think it's possible, but I couldn't tell you for sure, Judge. The irony of it is I was just accepted to the American Arbitration Association as an arbitrator on their panel. But I don't know what they would do under that circumstance. But I will say that it's part of the correspondence with plaintiff appellees. While this was all happening, we offered another forum under which this would not have been an issue. We specifically named a forum, offered it to them, and suggested we go forward in that forum. And that was not responded to. But that's not the contract either. So that's an offer to renegotiate the contract, basically. It's an offer for alternative given the stalemate. My concern is that I talked about the concerns about gamesmanship on the part of the plaintiffs, but I could also see gamesmanship on the part of your client. So that they basically negotiate a contract that requires AAA as the sole and exclusive arbitrator, knowing that the AAA rules are going to conflict with the contractual provision on the initial payments. And that is designed to create limbo. And when you don't take advantage of the tools available under the FAA, one could infer maybe that's exactly what's going on here. So what's the response to that? Well, in this case, there was no knowledge that the AAA would not bend its rules in adherence to the contract terms. In fact, we wrote letters to the American Arbitration Association in the record, citing the law in New York State as to why it should be evenly split and agreeing that ultimately the arbitrator can decide, but it's their obligation, the plaintiff appellee's obligation, to adhere to the contract and pay half. We cited the contract provision that says the contract prevails. We cited the Brady v. Williams case, which ruled that when there's a conflict between the agreement and the arbitration rules, the agreement prevails. So we were hoping that that would be the end result. But, I mean, it's worth remembering. I mean, the agreement says that the costs and expenses will be shared, but that's basically prior to a determination of which is the prevailing party, right? So, in other words, it doesn't say that they have to be shared on day one. It really says they have to be shared prior to the determination of which is the prevailing party. So there's an argument that this wasn't a breach at all. I don't know. The parties shall equally share the costs and expenses charged by the AAA prior to a determination of which is the prevailing party. That suggests to me that it's got to be equal before there's an award. You've got to pay them. You've got to even up before there's an award. It doesn't necessarily say that there has to be an even split on day one, just getting in the door. I would say, Your Honor, that that's probably not the most basic reading of that language in the contract. The most basic reading of that language in the contract would be that both sides share in the cost as it goes forward, subject to a different ruling by the arbitrator. Let me ask if I understand correctly. When you go to the AAA, an arbitrator is not appointed for the particular case until the fee is paid and the case is opened, right?  Okay, so what you're saying is that an arbitrator should have been appointed before the fee was paid, so that the arbitrator could decide that the plaintiff had to pay half of the fee? That's not what I was saying, Your Honor. I'm trying to figure out how the AAA was supposed to deal with this question of the obligation to pay the fee by the plaintiff. There is no arbitrator appointed until the fee is paid. Those are the local rule. That's the entity's rules. So how did you envision it getting to them being required to pay? That they waive the rule to allow an arbitrator to then rule on it, or that the plaintiff appellees- And rule on a contract point, namely the splitting of the fee, before anybody put up any money? Waive the rule that the employer should be paying a disproportionate amount of the filing fee. Or that the plaintiff appellee pay their share. Not that, right? Not particularly, no. But again, the ultimate- the plaintiff appellee could have paid what they were obligated to do under the contract, and then the arbitrator would have heard the matter. What is the relief you're seeking from us, particularly? A remand to the district court to do what? To appoint a substitute arbitrator on this case. And presumably that would not be subject to any- The 50-50 would be the only rule. The only requirement there. There wouldn't be any competing rule, right? From the new arbitrator. There are, yes. That's what you're looking for. Yes. Well, I think we're way over, Mr. Kimmel. We have the briefs. We certainly got our money's worth. I have to say, it's not lost on any of us that you've spent a lot more time litigating this issue than it would have cost for either party to put up the fees to get this in arbitration. And maybe more time than the underlying arbitration will take, if there is one. Thank you. All right. Thanks very much. We'll reserve decision.